UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROY LINDLEY, | § | |
| | § | |
|     Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-109 |
| | § | |
| TRS RECOVERY ASSOCIATES, INC., | § | |
| | § | |
|     Defendant. | § | |

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Defendant TRS Recovery Services, Inc.'s Motion for Partial Summary Judgment (D.E. 17). TRS Recovery Services, Inc. (TRS) seeks a summary judgment on all of Roy Lindley's (Lindley's) claims of violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (FDCPA). TRS reserves for later decision the resolution of its counterclaims, which allege that Lindley has brought this action in bad faith and for the purpose of harassment. For the reasons set out below, the Motion is GRANTED.

## ALLEGATIONS

At issue are two letters that TRS sent to Lindley. The first letter, dated October 1, 2011 (October letter), is a basic collection letter, which Lindley claims was a violation of the FDCPA in that it did not name the creditor that Lindley was allegedly obligated to pay. D.E. 8, p. 3. The second letter, dated January 20, 2012 (January letter), confirmed that TRS had received Lindley's cease and desist letter of January 17, 2012, which TRS had processed for Lindley's account. Lindley claims that this letter violated the FDCPA

because it failed to state that it was from a debt collector and was sent in violation of the cease and desist letter.  *Id*.

## DISCUSSION

**A.  The October Letter Did Not Violate the FDCPA.**

The FDCPA is formulated to prohibit "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  FDCPA § 1692e.  In its initial communication with the debtor or within five days thereof, FDCPA § 1692g(a)(2) requires the debt collector to clearly identify the name of the creditor to whom the debt is owed.  Lindley's only complaint regarding the October letter is his argument that it did not clearly identify the name of his creditor.

The October letter, with a row heading of "Customer," listed "First Victoria National Bank," followed by more details regarding the amount and date of the debt.  It then states, "Your unpaid debt has been assigned to TRS Recovery Services for collection."  D.E. 17-3.  Nothing in the summary judgment evidence contradicts the representation that First Victoria National Bank is the creditor and that it assigned the debt to TRS for collection.

Lindley first responds that the letter is not clear as to who he currently owed—whether First Victoria National Bank, TRS, or TeleCheck.  Lindley brings TeleCheck into the equation as a sister division of TRS, both being divisions of First Data Corporation.  Neither TeleCheck nor First Data Corporation are named as parties to this action. D.E. 8, pp. 1-3.

Relying on a Declaration supplied by TeleCheck's Vice President of Compliance explaining TeleCheck's business model in another unrelated matter, Lindley set out a synopsis of TeleCheck's operations in his First Amended Complaint. D.E. 8, ¶ 14; D.E. 22-5. The allegation reads:

> Upon information and belief TeleCheck is in the business of guaranteeing checks tendered to pay for consumer transactions. When checks are dishonored or result in an overdraft, Telecheck pays the merchant/payee or bank the face value of the check and in return is assigned all the merchant's or bank's rights and benefits.

(D.E. 8, ¶ 14). TRS admitted this allegation in its Amended Answer. D.E. 10 ¶ 15. Lindley thus argues that there is a disputed issue of material fact as to whether TeleCheck was the true creditor at the time of the October letter.

An explanation of a general business model is not affirmative evidence of who owns a particular debt, especially when that general business model does not purport to address every transaction of the company. Nothing about this admitted allegation or the Declaration that is its source addresses Lindley's debt or the relationship between First Victoria National Bank and TRS. Rather than a disputed issue of material fact, Lindley has presented speculation that the facts are not as they might seem. The Court does not decide summary judgment motions based upon speculation. If Lindley had admissible evidence that the debt was owned by TeleCheck or TRS, the disputed evidence would prevent summary judgment. However, mere surmise does not have the same effect.

Lindley's second argument is that the representation that the debt has been assigned to TRS for collection creates confusion as to who actually owns the debt.

Whether or not the language is confusing is a matter that is reviewed according to the unsophisticated or least sophisticated consumer test.  *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004).

> We "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Id*. The least sophisticated consumer standard "serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).  The unsophisticated consumer standard "serves the same purposes and apparently would lead to the same results in most cases, except that it is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder." *Id*.

*McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012).  The FDCPA does not protect consumers who intentionally distort communications or make irrational claims. *Id*.; *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000).

TRS argues that its letter complies with the FDCPA's creditor-identification requirement, citing *Hammett v. AllianceOne Receivables Mgmt., Inc.*, Civil Action 11-3172, 2011 WL 3819848 (E.D. Pa. Aug. 30, 2011).  In *Hammett*, the court held that a listing of the "client" name was equivalent to listing the "creditor" name.  This Court finds that "customer" is similarly equivalent to "creditor" in the context of the subject letter.  *Hammett* further held that a statement that the account was referred to the debt collector for collection, with the account number and amount of the debt, was appropriate and not confusing under the FDCPA.

Lindley responds that a statement that the debtor's rights and obligations have been assigned to the debt collector for collection is vague and confusing, citing *Dewees v. Legal Servicing, LLC*, 506 F.Supp. 2d 128, 132 (E.D.N.Y. 2007). In *Dewees*, the subject sentence read, "The debt identified was sold by CHASE, all of your rights and obligations regarding this contract have been assigned to this office." This sentence was held to create ambiguity and thus confusion in that: (1) it does not specify the purchaser of the debt from Chase; and (2) an assignment to the debt collector, without qualification, could indicate that the debt collector was the purchaser from Chase, a subsequent owner that purchased from an intermediate purchaser, or even an agent of the owner. That is not the fact scenario presented here and *Dewees* does not govern the outcome of this case.

Nothing about the TRS letter creates the impression that First Victoria National Bank sold the debt to a third party. Additionally, TRS specifically states that the debt was assigned to it "for collection." According to the Fifth Circuit, such a use of the term "assignment" is not false, deceptive, or misleading. *Parish v. Frazier*, 195 F.3d 761 (5th Cir. 1999) (*per curiam*). In *Parish*, the debt collector filed a collection action against the debtor and attached an "assignment" that demonstrated its right to collect. The Court wrote:

> The attachments to the collections complaint in question expressly indicate that Parish's debt was assigned "for collection" only and authorize the defendants to take legal action on behalf of Memorial as Memorial's agents, not in their own right. Further, the contract between Memorial and the defendants also specifies that the debt was assigned only for collection and that any amounts collected by the defendants were to be paid in full to Memorial. Thus, Memorial clearly retained control and ownership of the debt

>owed by Parish. The sworn affidavit was not misleading, and does not constitute a violation of the FDCPA § 1692e by the defendants.

*Id*. at 765.

Likewise, TRS's explanation that the debt had been assigned to it for collection is not an FDCPA violation. As Lindley has failed to offer competent summary judgment evidence that someone other than First Victoria National Bank was his creditor and because TRS properly identified itself as assignee for collection, TRS is entitled to summary judgment on Lindley's claims that its October letter was false, deceptive, or misleading or otherwise failed to clearly identify the creditor.

### B. The January Letter Did Not Violate the FDCPA.

Lindley wrote to TRS to "cease and desist" contacting him about the debt. D.E. 17-4. On January 20, 2012, TRS sent Lindley a letter acknowledging receipt of that directive:

>Dear Mr. Lindley,
>
>This letter certifies that TRS Recovery Services, Inc. (TRS) has received your Cease and Desist request and the reference number mentioned above has been updated in all systems to reflect this information.
>
>If I can be of further assistance, please do not hesitate to contact me at xxx.xxx.xxxx or toll free at xxx.xxx.xxxx ext. xxxx.
>
>Thank you,
>Carol Childress
>Compliance Administrative Assistant
>TRS Recovery Services, Inc.

D.E. 22-4. Lindley claims that this letter violated his FDCPA rights in three respects: (1)

in communicating receipt of the cease and desist directive, it *ipso facto* violated the cease and desist requirements under FDCPA § 1692c(c); (2) because the cease and desist directive indicates that no communication is welcome, its receipt at any time was inconvenient under FDCPA § 1692c(a); and (3) it does not state that it is from a debt collector as required by FDCPA § 1692e(11).

>   According to FDCPA § 1692c(c),

>> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—

>> (1) to advise the consumer that the debt collector's further efforts are being terminated . . . .

The statute does not prohibit all communications with the consumer—just those with respect to the debt. The Court agrees with TRS that this letter of acknowledgment was not a communication "with respect to such debt," but was rather very specifically addressing the cease and desist letter. Quite simply, there is no mention of the debt or demand for payment in the letter.

>   Even if the letter were considered to be "with respect to such debt," it was formulated to advise Lindley that its further communication efforts were being terminated, thus falling into the first exception to prohibited communications.

>   TRS is entitled to summary judgment on the claim under FDCPA § 1692c(c).

>   Lindley's complaint that his receipt of the January letter was "inconvenient" under FDCPA § 1692c(a)(1) likewise fails. That provision prohibits a communication "at any

unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." Lindley argues that, once he sent his cease and desist letter, any communication was "inconvenient."

If Lindley is correct, then subsection (a) is in conflict with the three express exceptions to a cease and desist order under subsection (c). The Court will not construe the statute in such a way as to manufacture a conflict that does not have to exist or to defeat the statute's general purpose. Fundamental rules of statutory construction prohibit Lindley's conclusion. *E.g., Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1231 (5th Cir. 1996); *Almendarez v. Barrett-Fisher Co.*, 762 F.2d 1275, 1278 (5th Cir. 1985). Section 1692c(a) is not directed at routine communications but prohibits "unusual" communications. Regular United States Mail to a last known residential address is not on its face "unusual" or "inconvenient." TRS is entitled to summary judgment on Lindley's FDCPA § 1692c(a) claim.

Last, Lindley complains that the January letter does not state that it is from a debt collector in violation of FDCPA § 1692e(11). According to that provision, any subsequent communication with the consumer must disclose that it is from a debt collector. Under FDCPA § 1692a(2), a "communication" is the "conveying of information regarding a debt directly or indirectly to any person through any medium."

TRS asserts that its confirmation of receipt and processing of Lindley's cease and desist letter was not "regarding a debt." This Court agrees. The Tenth Circuit addressed whether an FDCPA "communication" includes a fax that only sought to verify the

debtor's employment. That court held that a "communication" is not so broadly construed:

> The facsimile in question is not a "communication" under the FDCPA. A third-party "communication," to be such, must indicate to the recipient that the message relates to the collection of a debt; this is simply built into the statutory definition of "communication." This fax cannot be construed as "conveying" information "regarding a debt." Nowhere does it expressly reference debt; it speaks only of "verify[ing] [e]mployment." Nor could it reasonably be construed to imply a debt.

*Marx v. General Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011), *cert. granted in part*,[1] 132 S.Ct. 2688, (May 29, 2012)

Other courts have held that similar communications fall outside the purview of FDCPA regulation because their animating purpose was not to induce a debtor to pay. *E.g., Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) ("The statements were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely" thus not a "communication" under the FDCPA); *Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (letter informing debtor of status of account with prospective due dates was not a dunning letter under FDCPA). Contrary to Lindley's argument, the letter's invitation for Lindley to call if he needed any assistance did not transform this informative letter into an effort to collect the debt. *See Mabbitt v. Midwestern Audit Serv., Inc.*, No. 07-11550, 2008 WL 723507, *4 (E.D. Mich. Mar. 17, 2008) (invitation to call was a mere courtesy).

---

[1] The petition set out two issues. Certiorari was granted on Issue number 1. Issue number 2, regarding whether the fax constituted a "communication," was not included in the Court's grant of certiorari. See http://www.supremecourt.gov/qp/11-01175qp.pdf).

Because the January letter did not address a debt, it was not a "communication" under the FDCPA. Consequently, the FDCPA did not require that it disclose that the sender was a debt collector. The FDCPA was intended to prohibit false, deceptive, and misleading tactics. Nothing about the January letter is false, deceptive, or misleading. TRS is entitled to summary judgment on Lindley's FDCPA § 1692(e)(10), (11) claims.

## CONCLUSION

For the reasons set out above, Defendant TRS Recovery Services, Inc.'s Motion for Partial Summary Judgment (D.E. 17) is GRANTED and all of Plaintiff Roy Lindley's claims against TRS are DISMISSED.

ORDERED this 12th day of December, 2012.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE